## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **DONALD T. SMITH,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Civil Action No. 5:15-cv-3472** |
| | ) |
| **UNITED STATES OF AMERICA,** *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 21), filed on June 15, 2015. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 23.) Plaintiff filed his Response on September 8, 2015. (Document No. 29.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted.

### FACTUAL AND PROCEDURAL HISTORY

On March 23, 2015, Plaintiff, acting *pro se*[1] and formerly incarcerated at FCI Beckley, located in Beaver, West Virginia, filed his Complaint in this matter claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 2.) Plaintiff names the following as Defendants: (1) United States of America; (2) Mr. J. Brantley; (3) Dr. Carr; (4) Dr. Martin; (5) Ms. Puret; (6) Mr. Woolwine; and (7) Ms. Thomas. (Id., pp. 1 and 4.) Plaintiff alleges that Defendants were aware that Inmate ["X"] was making threats against Plaintiff, but Defendants failed to take appropriate action to protect Plaintiff from a subsequent attack. (Id., pp. 6 - 7.) Plaintiff explains that he and Inmate X had a disagreement concerning the use of the pool table, "so [Plaintiff] informed the torch about the incident, who is the inmate RDAP group mediator responsible for resolving conflicts." (Id., p. 6.) Although the "torch  facilitator advised [Plaintiff] to bring the conflict to group, it never occurred." (Id.) Plaintiff explains that Inmate X violated the confidentiality policy by telling inmates in general population about the incident, and the torch facilitator had to report the incident to prison staff. (Id.) Plaintiff acknowledges that prison staff conducted a group meeting where Inmate X was questioned regarding the incident. (Id.) Plaintiff states that prison staff removed Inmate X from RDAP after Inmate X admitted he violated the confidentiality policy. (Id.) Plaintiff contends that Inmate X made threats towards Plaintiff following Inmate X's dismissal from RDAP and the threats were reported to prison staff. (Id.) Plaintiff acknowledges that when prison staff became aware that Inmate X planned to attack Plaintiff at his work assignment, prison staff "took precaution and changed [Plaintiff's] work assignment to unit orderly." (Id., p. 7.) Plaintiff, however, alleges that he was attacked by Inmate X the following day when he entered the recreation room to get a basketball. (Id.) Plaintiff claims that Inmate X punched him multiple times in the forehead, which resulted in "2 inch abrasions to his forehead." (Id.) Plaintiff explains that he attempted to exit the recreation room during the attack, but other inmates pushed him back inside the room so Inmate X could continued the attack. (Id.) Plaintiff complains that prison staff could have prevented the attack by either transferring Inmate X or placing him in segregation

after Inmate X made threats against Plaintiff. (Id.) As relief, Plaintiff requests monetary damages. (Id., p. 4.)

By Order entered on April 15, 2015, United Magistrate Judge R. Clarke VanDervort granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 5.) On June 15, 2015, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 21 and 22.) First, Defendants argue that Plaintiff's Bivens claim must be dismissed due to Plaintiff's failure to exhaust administrative remedies. (Document No. 22, pp. 12 - 14.) Second, Defendants argue that Plaintiff's FTCA claim should be dismissed because "the actions of BOP officials clearly fall within the discretionary function exception to the FTCA." (Id., pp. 14 - 22.)

As Exhibits, Defendants attach the following: (1) The Declaration of Sarah Lilly (Document No. 21-1, pp. 1 - 4); (2) A copy of Administrative Tort Claim No. TRT-MXR-2015-00789 (Id., pp. 6 - 11.); (3) A copy of the denial letter from the United States Department of Justice regarding Administrative Tort Claim No. TRT-MXR-2015-00789 (Id., p. 13.); (4) A copy of SENTRY "Inmate History Quarters" (Id., pp. 15 - 16.); (5) A copy of th SIS Investigation (Id., pp. 18 - 21.); (6) A copy of the Inmate Injury Assessment for Plaintiff (Id., p. 23.); (7) A copy of the Inmate Injury Assessment for "Inmate X" (Id., p. 25.); (8) A copy of SENTRY Administrative Remedy Generalized Retrieval (Id., pp. 27 - 29.); (9) The Declaration of J. Brantley (Id., pp. 30 - 32.); (10) A copy of Psychology Services Administrative Note regarding Plaintiff dated June 3, 2013 (Id., p. 34.); (11) A copy of Second Administrative Note dated June 3, 2014 (Id., p. 36.); (12) A copy of Psychology Services Administrative Note regarding Plaintiff dated June 4, 2014 (Id., pp. 38.); (13) A copy of a Memo to SIS (Id., p. 40.); and (14) The Declaration of S. Thomas (Id., pp. 41 - 42.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff

on June 16, 2015, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 23.) On September 8, 2015, Plaintiff filed his Response in Opposition. (Document No. 29.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a

4

genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1.    **Bivens Claim:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will

not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to
> be pleaded and proven by the defendant. That exhaustion is an affirmative defense,
> however, does not preclude the district court from dismissing a complaint where the

7

failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For <u>Bivens</u> purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. <u>Id.</u>, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. <u>Id.</u>, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. <u>Id.</u>, §

542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies. (Document No. 22, pp. 12 - 14.) Specifically, Defendants contend that "Plaintiff did not file any administrative remedies with regard to the claims made in the instant case prior to filing his lawsuit." (Id., p. 13.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 21-1, pp. 1 - 4.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 1.) Ms. Wahl explains that she also has access to information regarding inmates in the BOP's custody. (Id.) Specifically, Ms. Wahl states as follows in her Declaration (Id., p. 4.):

38.    Plaintiff did not file any administrative remedies with regard to the claims made in the instant case prior to filing his lawsuit.

39.    Plaintiff has filed a total of four administrative remedy requests during his incarceration, all of which were filed in 2009, and thus do not concern the events alleged in the instant case.

In response, Plaintiff contends that he properly exhausted his administrative remedies. (Document No. 29.) Specifically, Plaintiff argues that his <u>Bivens</u> claim is properly exhausted "because [his] requests for administrative remedy under the FTCA satisfies the exhaustion requirement of the PLRA for review of [his] claim for relief under Bivens." (<u>Id.</u>)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the PLRA. Although Plaintiff contends that he properly filed an administrative tort claim with the prison, the exhaustion requirements concerning FTCA and <u>Bivens</u> actions differ.[3] <u>See</u> <u>Davis v. United States</u>, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); <u>Murphy v. Inmate Systems Management</u>, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). Having examined the record, the Court finds that the administrative remedies filed by Plaintiff relate to the exhaustion of his FTCA claim, not his <u>Bivens</u> claim. Plaintiff fails to produce any documents indicating that he exhausted his <u>Bivens</u> claim. To the extent Plaintiff is arguing that he should be excused from exhaustion due to the futility of filing a administrative remedy asserting the same claim denied in his administrative tort claim, his argument is without merit. The United States Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion

---

[3] Before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. <u>Id.</u>, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, <u>Id.</u>, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. <u>Id.</u>, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

requirements. . . ."[4] Booth v. Churner, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958

(2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion

requirement."); Goodwin v. Beasley, 2011 WL 835937, * 3 (M.D.N.C. March 3, 2011)("Courts have

squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing lack

of knowledge about the grievance process."); Smith v. Boyd, 2008 WL 2763841, * 1 (D.S.C. July

11, 2008)("This court cannot waive the exhaustion requirement, which was specifically mandated

by Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or

inadequacy with the administrative grievance process."); Jacocks v. Hedrick, 2006 WL 2850639, *

5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye

were not special circumstances that would excuse his failure to exhaust where he had filed prior

grievances complaining of other matters). Based on the foregoing, the undersigned recommends that

Plaintiff's Bivens claim be dismissed in view of his failure to exhaust the administrative remedies

provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., prior to

filing his Complaint.

**2.**      **FTCA Claim:**

    Plaintiff asserts a negligence claim under the FTCA against Defendants. Such claims are

appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C.

---

[4] Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(*citing Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury.

§§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id. Section 2680, however, exempts from the waiver certain categories of claims. See 28 U.S.C. §§ 2680(a)-(n). Section 2680(a) contains the discretionary function exception. The discretionary function exception excludes from the FTCA's waiver of sovereign immunity:

> [a]ny claim based upon an action or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abuse.

28 U.S.C. § 2680(a). Plaintiff bears the burden of demonstrating that the discretionary function exception does not apply. Welch v. United States, 409 F.3d 646, 650-51 (4th Cir. 2005); LeRose v. United States, 2006 WL 5925722 * 8 (S.D.W.Va. May 17, 2006)(J. Copenhaver). Whether the discretionary function exception bars suit against the United States depends upon two factors. See United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the conduct at issue must involve "an element of judgment or choice." Berkovitz, 486 U.S. at 536, 108 S.Ct. 1959; also see

Williams v. United States, 50 F.3d 299, 309 (4ᵗʰ Cir. 1995). Where there is a mandatory statute, regulation, or policy, there is no discretion, and therefore no exception "because 'the employee has no rightful option but to adhere to the directive.'" Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273(quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954.) Second, if conduct involved an "element of judgment or choice," the Court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322 - 23. "Because the purpose of the exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on consideration of public policy." Id. at 323. The focus is on the "nature of the conduct" and not the "status of the actor." See Gaubert, 499 U.S. at 325. Thus, the Court should "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." Suter v. United States, 441 F.3d 306, 310 - 11 (4ᵗʰ Cir. 2006). "When a statute, regulation, or agency guideline permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id.

First, the Court must consider whether the challenged conduct was discretionary or involved an element of judgment or choice. In the instant case, Plaintiff contends that prison officials failed to protect him from an assault by another inmate. Specifically, Plaintiff asserts that prison officials could have prevented the attack by either transferring Inmate X or placing Inmate X in segregation. Plaintiff, however, fails to identify any mandatory directive concerning inmate classification or inmate placement. Title 18 U.S.C. § 4042 provides that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses

13

against the United States." 18 U.S.C. § 4042(a)(2). Although the foregoing statute imposes upon the BOP a general duty to care for inmates, the statute does not set forth any specific means of carrying out that duty. Thus, the BOP retains discretion as to how it will fulfill that duty. See Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998)(Section 4042 gives discretion to the BOP as to the means to comply with the statute.); Goforth v. United States, 2013 WL 5658347, * 3 (S.D.W.Va. Oct. 15, 2013)("Cases from this circuit and other circuits have unanimously held that BOP officials retain wide discretion as to the means by which this general duty is fulfilled.") Decisions concerning inmate classification and inmate placement involve an element of judgment or choice. See Donaldson v. United States, 281 Fed.Appx. 75 (3rd Cir. 2008)(finding that "[n]o federal statute, regulation, or policy required the BOP to take a particular course of action to ensure [plaintiff's] safety from attacks by other inmates," including his fellow inmate who had made prior threats of violence); Santana-Rosa v. United States, 335 F.3d 39, 44 (1st Cir. 2003)(explaining that "decisions with regard to classification of prisoners, assignment to particular institutions or units, and allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have flexibility to operate"); Cohen, 151 F.3d at 1344(prison's decision to place the inmate attacker at a minimum security prison was a discretionary function); Miller v. SFF Hazelton, 2015 WL 1021456, * 2 (N.D.W.Va. March 9, 2015)(finding that "a prison official's decision about where to house inmates involves an element of judgment or choice [and] [t]hat is true regardless of whether the official knows or has reason to know that a particular inmate poses a threat to another inmate"); Little v. United States, 2014 WL 4102377, * 6 (N.D.W.Va. Aug. 18, 2014)(finding that the discretionary function exemption applies to decisions as to inmate classification and placement in general population); Goforth, 2013 WL 5658347 at * 3 ("BOP housing assignments are discretionary and are not subject to a mandatory directive"); Davis v. United

States, 2010 WL 2754321 (W.D.Va. July 12, 2010)(discretionary function exception applied to inmate's claim that surveillance cameras and officers were not properly positioned to maintain security); Strachan v. United States, 2009 WL 1586812 (E.D.Ky. June 5, 2009)(finding discretionary function exception applied to plaintiff's claim that he was assaulted by another inmate because there were no officers or manned security cameras in the living unit); and Brown v. United States, 569 F.Supp.2d 596, 600 (W.D.Va. 2008)(discretionary function exception applied to "a prison official's decision regarding whether to place an inmate in the general population").

In the instant case, prison official decision to continue house Inmate X in general population clearly falls within the discretionary function exception.  Plaintiff acknowledges that when prison staff became aware that Inmate X planned to attack Plaintiff at his work assignment, prison staff "took precaution and changed [Plaintiff's] work assignment to unit orderly." When Plaintiff notified Defendant Brantley of his concerns, Defendant Brantley immediately asked Plaintiff if he wanted to be placed in protective custody for his safety and Plaintiff declined such a placement. (Document No. 21-1, pp. 31 - 32.) To the extent Plaintiff argues that prison officials should have transferred or placed Inmate X in SHU, prison officials are not required to take such actions based solely upon an inmate's allegations.[5] Based on the foregoing, the undersigned finds that the first prong of the discretionary

---

[5] The SIS "Inmate Investigative Report" concluded as follows (Document No. 21-1, p. 21.):

The investigation determined on June 2, 2014, Smith initiated an argument with [Inmate X] over a pool table. During that incident he called [Inmate X] several names in front of several other inmates. Smith went to RDAP staff and reported arguing with [Inmate X] as well as [Inmate X] talking with someone not in RDAP about the argument which is a breach of confidentiality. The end result was [Inmate X] being expelled from the program and the inmates blaming Smith. For the next 2 days, Smith and [Inmate X] argued back and forth whenever they saw each other. On June 4, 2014, Smith and [Inmate X] argued in Food Service at breakfast and then again at Time Square. Smith was on Poplar sidewalk when he came back and approached [Inmate X] telling him to go ahead and hit me as another inmate pushed

function test is satisfied because prison staff are allowed discretion regarding the classification and placement of inmates.

Next, the undersigned will consider whether the judgment is of the kind that the discretionary function exception was designed to shield. As stated above, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. Gaubert, 499 U.S. at 324. The BOP "must balance a variety of factors and employ considerable discretion in determining how to go about protecting prisoners from harm, while also managing costs and ensuring the safety of the prison staff and the community." Caudle v. United States, 72 F.3d 132 (7th Cir. 1995). Thus, "[m]atters such as the allocation of guards and other correctional staff are plainly grounded in policy." Goforth, 2013 WL 5658347, at * 4. Additionally, decisions concerning the placement of inmates are grounded in public policy. See Cohen, 151 F.3d at 1344(finding that the BOP's "actions in classifying prisoners and placing them in institutions involve conduct and decisions that meet both prerequisites for application of the discretionary

---

[Inmate X] closer to Smith. Smith was trying to provoke [Inmate X] to hit him so that it was assault and he could remain in the program. After that, the Midwest car demanded they fight and get it out of their system. Basically, they were tired of dealing with both of them running their mouth to each other for 3 days. On June 4, 2014, at 7:47 a.m., [Inmate X] went in the equipment room in Recreation and Smith followed. The door was pulled shut by [another inmate] as he and several other inmates watched the altercation. Smith and [Inmate X] wrestled with each other, [Inmate X] choked Smith as Smith pulled [Inmate X's] hair. Approximately 3 minutes later, both inmates came out, Smith's clothes were in disarray, his ID was hanging sideways from his neck and he was out of breathe. They stood and talked for a few minutes before leaving the area. Smith reported the incident to RDAP unit staff, which led them to question the inmates in the area of the fight. There were 4 inmates to sign out of RDAP as a result of the incident, which has caused animosity toward Smith and [Inmate X] from the entire Midwest inmate population. [Inmate X] and Smith received an incident report for a Code 201, Fighting Another Person.

function exception"); <u>Usry v. United States</u>, 2013 WL 1196650, * 7 (N.D.W.Va. March 25, 2013),

<u>aff'd</u>, 545 Fed.Appx. 265 (4th Cir. 2013)(finding that decisions regarding the placement of inmates

"are unquestionably grounded in social, economic, safety and security concerns"); <u>Jacocks v.

Hedrick</u>, 2006 WL 2850639, * 10 (W.D.Va. Sep. 29, 2006)("The supervisory defendants' decisions

regarding . . . staffing of the housing unit also fall within the discretionary function exception);

<u>Michell v. United States</u>, 149 F.Supp.2d 1111, 1114 (D.Ariz. 1999), <u>aff'd</u>, 20 Fed.Appx. 636 (9th Cir.

2001)("Decisions by governmental officials as to the day-to-day security needs of a prison, including

the number of guards to employ to supervise a given area, where to place emergency alarms, and

tactical choices made surrounding the movement of inmates within the institutions are judgment calls

and choices based on policy determinations that seek to accommodate 'safety [goals] and the reality

of finite agency resources.'") Based on the foregoing, the undersigned finds that the discretionary

function exception applies because both prongs of the discretionary function test are satisfied.

Accordingly, Plaintiff's above claim should be dismissed for lack of subject matter jurisdiction.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and

accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants'

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 21), and

**DISMISS** Plaintiff's Complaint (Document No. 2), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby

**FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days,

filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 19, 2016.

Omar J. Aboulhosn
United States Magistrate Judge